Our next case, I'm going to go ahead and call it, but I'll give you all a chance to clear out and let the next group in, is State Farm v. Beatriz Muse, and we have Richard Diaz and Karen Parker for the appellants, and David Spector for the appellees. But again, take your time to get set up. And Mr. Diaz, are you first up? If you are, I'll let your counsel just get settled, but you can proceed when you would like to. And it looks like you're going to be sharing time with Ms. Parker, or you're going to go, you're both going to go for three minutes to start, and then save time for rebuttal? That's correct. Okay. You may proceed. If I may please, good morning. My name is Richard Diaz. I represent five of the appellants in this case, two corporations, health and wellness, the other one is medical wellness, and three individuals, family members, Lazaro Muse, MUSE, his sister, Beatriz Muse, and her husband, Will Santos. The district court erred in granting a sweeping and wholesale summary judgment on all counts moved upon by the plaintiffs. There was one that they did not move upon, which is a common law fraud count. As to my five defendants and corporate representatives and the three individuals in their individual capacity, that summary judgment was wholesale as to all of the counts against those defendants, and also was a summary judgment on damages in the entire amount sought by the plaintiffs in the complaint. It was our position that there was sufficient evidence in the record to overcome the summary judgment as to all defendants on all counts, including the damages portion of the case. And the court, in order to justify or to support its finding, basically determined that there was an absolute failure of the five appellants to support their opposition to the summary judgment motion with record evidence. The rule that the court relied upon is Local Rule 56.1. The rule requires what I call pinpoint citations and gives you examples as to how you should do that. It's our position that if you look at the record, we complied substantially with that ruling. For example, let me say it a little differently. Where we did not comply fully was in line numbers and deposition pages. So, for example, if there was a deposition reference, we put the person's deposition, the volume number, the pages, but not line 12 to 13. But in some examples, we actually quoted the deposition testimony itself. And, for example, in the Dr. Sweet report, which was not a numbered paragraph report, we put the page number where his report indicated the testimony that we were relying upon because in pages 13 and 14 or 12 and 13 is where he had his ultimate conclusion. So it's our position that the record citations were sufficient to satisfy the rule. And to the extent that they weren't, our position is that the rule does not allow the court to do what it did with all due respect to Judge Scola. And that is that he disregarded it for purposes of using it to oppose the summary judgment motion. Read the rule carefully. What it says is you can strike the pleadings. He didn't do that. You can sanction the parties. He didn't do that. But there was no sanction. Or you can order compliance. Well, no compliance was ordered. There was no notice of noncompliance until— I mean, how is—so this district judge is a stickler. Okay? I mean, he is—that's his stick. You know, we look at this for abuse of discretion. We're not sort of in the business of enforcing district court rules about summary judgment briefing. Why doesn't that resolve this issue that it's abuse of discretion for the district court, and this is what he wanted to do to enforce his rule? You know, whether you substantially complied or technically complied or sort of complied, that's kind of a call for the district judge to make. Right. Understood. And the reason is because the call that the court can make is under the rule itself. And if I can just— In subsection D, delta of the rule, it says consequences. If a party fails to serve any statement of material facts that does not comply with this rule, the court may strike the statement, which it did not do. It disregarded it, did not strike it. Require immediate compliance, which the court did not do. Grant relief to any opposing party for any prejudice arising from noncompliance statement or response or enter other sanctions that the court deemed appropriate. Those are the four things the court can do. One thing that the court did, which the rule does not allow, and that's why it is an abuse of discretion, is it just said, we are not going to consider it, and that's not what the rule allows the court to do. Most importantly, where there was sufficient citations, the court made factual findings and sat as a jury and said, you know what, Lacero or Noel Santos said this, and it is in direct opposition to a statement of fact by State Farm. But you know what? I don't believe it beyond a reasonable doubt. That's a standard in criminal cases, not civil. And with all due respect to Judge Scola, he made an example such as that credibility findings on areas where there were clear pinpoint citations. There was substantial compliance with the rules. There was deposition citation by volume, by page, and admittedly- You say he can't disregard it. Hasn't he, in effect, struck it? I mean, isn't that really the end result of what he did? Well, if you read the rule in its entirety, and it talks about noncompliance and striking and sanctions, when we look at every other part of the law, for example, 37, Rule 37, and discovery, if a court is going to go to that extreme, then parties have a right to, in order to show cause, in this case, there were multiple instances where, on the other side of this case, there were noncompliance with local rules. And on two specific occasions, which I cited in my briefs, we said, listen, just treat us equally. Like you said, Judge Scola is a stickler. Hold us both to the same standard. But when they failed to file the local rules, they got notified by the court and said, hey, this is what you've got to do for this judgment to be entered. And had both sides been treated equally, we wouldn't have this case on appeal. Thank you, Mr. Diaz. We took you over time, but you still have five minutes for rebuttal. Ms. Parker. And as you've noticed, three minutes goes very quickly. Thank you, Your Honors, for the unique opportunity to present oral argument. My name is Karen Parker, and I represent the appellant, Dr. Jesus Lauritz, in this. There are one issue, as far as Dr. Lauritz's involvement. Why is he here? Why is he part of this appeal? Why wasn't summary judgment granted in his favor? Or at the very least, why didn't the court find, which it did in its order on the motion for reconsideration, that there were genuine issues of material fact as to fraudulent concealment? And fraudulent concealment, which the plaintiffs did not originally allege or argue, they argued delayed discovery. And delayed discovery is not applicable to unjust enrichment and for dupe to claims without showing due diligence. So the only way they can escape the statute of limitations issue is by demonstrating that there was fraudulent concealment. As a matter of record, and I am joined at the hip with my colleague here on the pinned citation, so I defer to his argument and presentation, to Your Honors. But I would also like to point out that the court is still obligated to review the record as a whole. And the record as a whole does not support that there was fraudulent active and willful concealment by Dr. Lauritz. The two documents that are a matter of record that State Farm relied on were two CMS 1500 forms that were not signed by Dr. Lauritz. They were signed by a medical doctor, a treating doctor, not Dr. Lauritz. He didn't have an active participation in the signing of that document. The other document is the application for the ACCA licensing for pain relief clinic. That is the licensing authority that regulates how a medical director is to run that clinic. They would be the entity that would enforce his obligations as far as licensing is concerned, not State Farm. Taking State Farm's statement of undisputed issues of fact as to their motion for summary judgment, and as you know in their motion, there's one little section addressed to Dr. Lauritz. They only used the 1500 forms and the ACCA licensing. Those don't rise to the level of active and willful concealment to cause State Farm not to act with due diligence to bring this lawsuit against Dr. Lauritz in a timely manner. They admitted, and that's where Dr. Lauritz has established his entitlement to the affirmative defense. They admitted he started working in 2010. He left in April of 2013, and they admit the statute of limitations expired or the cause of action accrued as of the last element under the two rules, under FDUPTA and under unjust enrichment at the time that he vacated his position or resigned his position in April of 2013. Doesn't the district court's order itself seem to suggest that there's an issue of material fact related to this question? Exactly. My question again is, why are we here? Judge Scola said in his order, clarifying his order on the summary judgment and his order denying the motion of a summary judgment, actually specifically said it is abundantly clear that the evidence at a minimum raises a genuine issue of material fact regarding the delayed accrual or tolling of State Farm's claims based on fraudulent concealment. So the court, and I guess I'll reserve the relief that I asked for in my rebuttal, but there is no record evidence to support Dr. Lareed's active and willful concealment as it relates to the causes of action brought against him by State Farm. It just doesn't exist. And whether I fail to specifically put a line and a page, I put page numbers on his very short and condensed deposition because his deposition wasn't taken in a whole. But under the circumstances, there is no record evidence to support it. I reserve my rebuttal time. Thank you, Ms. Parker. Mr. Spector. Good morning. David Spector from Holland and Knight on behalf of the Appalachians joined by my colleague, Caitlin Saladrigas. Judge Scola's order on the competing summary judgment motions and on pre-consideration was correct. The final judgment should be affirmed. Taking Dr. Lareeda's position first, and we'll move backwards through it. So under the Morton's case that we cited in our motion for supplemental authority, in addition to the primary authority we cited in our brief, the defendant always bears the burden to show that their affirmative defense should be granted. In the Morton's case, this court explained that under when you have a statute of limitations affirmative defense where fraudulent concealment is an issue for the trial court, the burden is borne by the defendants to show that there is no genuine issue of material fact as to the existence of the reasonable diligence and what that plaintiff should have done or not. They didn't do that here. There isn't one shred of evidence in this record offered by the defendants that shows that State Farm was dilatory, didn't act diligently, or had some knowledge that should have propelled them forward. They had the opportunity to do so. They served no discovery in the underlying case towards those issues. Dr. Lareeda didn't appear at the deposition of the State Farm corporate representative where they could have asked all of those questions. The record is void of any indication that Dr. Lareeda has met his initial burden to show that he would be entitled to summary judgment on the issue of statute of limitations. So what about the issue of, so you got summary judgment on, you know, you the plaintiff won this case, which, you know, this happens like once every 45 summary judgments that the plaintiff gets one, right? Why isn't the statute of limitations issue a jury issue? So, you know, the district court denies the doctor's motion on the statute of limitations, but that doesn't necessarily resolve the question of whether it's not a jury issue. Well, for two grounds. Number one, delayed discovery, we'll talk about it in a moment, is in play, that doctrine, as well as the content of fraudulent concealment. But just focusing on fraudulent concealment for the moment, we have to examine the burden shifting. The only way they could get to a jury, Dr. Lareeda could get to a jury on that issue, is if they met their burden at the summary judgment briefing stage to show that there is some record evidence suggesting that State Farm did not act diligently or was not reasonable in the way it investigated its claim. It must be in the record. Only then, according to this court, in the Morton's case, does that burden then shift over to State Farm. Didn't Mr. Lareeda put into evidence, didn't he adopt pain relief's response that said that they described how pain relief submitted medical records with the bills that would have put State Farm on notice of all the deficiencies? He did, just so we're clear, Dr. Lareeda didn't ever file a response to the summary judgment papers. He only adopted pain relief. Pain relief was primarily stricken because he relied on affidavits, which were late disclosed witnesses that the district court properly did not consider. There is no record evidence of what State Farm knew. In order for Dr. Lareeda to meet his initial burden, which Judge Scola clarified in DE 352, and said the initial burden was on these folks. This court's decision in Morton's, the Darry's case, controls. That says when you have an issue of fraudulent concealment on a statute of limitations issue, it is always, and that was the language that this court used, always the defendant's burden to show that the plaintiff did not act diligently and reasonably in identifying and investigating the fraud or the facts. So what was left of that pain relief affidavit, the Daniel Colazzo affidavit? There was, Daniel Colazzo was the purported owner of pain relief. And he did testify as to the operations at pain relief. But there is no evidence there at all as to what State Farm knew. There were self-serving conclusory statements that State Farm was aware. But Judge Scola got it right. Daniel Colazzo was in no position to state any way what State Farm was aware. The only evidence that could have done that would be discovery aimed at State Farm. Didn't State Farm, can't we presume that State Farm received the bills that it paid? Not only can you presume, it's in the record. So wouldn't it be, if the allegation is these bills make it obvious what's happening, do you really need testimony from State Farm that they obviously were put on alert by this fraud? I mean, will State Farm ever testify to that? You do need testimony to that because it's untrue. The submission of a bill by a clinic such as these is presumed under, it's virtually law throughout the country, but Florida law as well, that they are lawful and that the services meet all the requirements under Florida's no-fault statute. It is a presumption that an insurer may rely upon. An insurer is not required to fly spec every bill coming in and wonder if it is fraudulent or not. In fact, the entire statutory framework of Section 627 explicitly provides for that. Because what it says is, hey, insurers, you're going to get a bill in, you're going to process it within 30 days, you have the right to rely on it being lawful because you can later come back and challenge it at any time, Your Honor. That's in the statute. Well, let's say, I won't ask you to concede in any way that these bills had red flags, but let's say that there was a bill that just had red flags all over it, that any person would see and think, geez, this insurance company should know that this is fraudulent. Would that bill be enough or would you need someone at the insurance company to say, yep, I knew that was fraudulent, I didn't do anything? I think that seems like a stretch to me that you'd need affirmative testimony in that regard. So in that hypothetical, which, so we're clear for the record, doesn't exist in this case. I know, I know. I made a hypothetical. Hypothetically, that might, under certain circumstances, which we'd have to examine in more detail, put an insurer on notice. But that's not this case. What is this case? Dr. Louritas, from 2010 to 2013, was the medical director at Pain Relief. A medical director is required to oversee the operations to ensure that bills are not fraudulent, all the records are kept properly, the practitioners do their jobs, all the issues that are present in this case. He didn't do any of it, okay? His affidavit even in this case says I wasn't responsible for the day-to-day operations. That is absolutely in contrast to the law. He was. He is the gatekeeper, right? So in this case, Dr. Louritas starts doing this from 2010 to 2013. That gets the ball rolling. State Farm then relies, lawfully relies, on the submission of these bills to issue payment. And those dominoes start to fall, the ball starts rolling down the hill. State Farm has no reason, if you look at the record evidence, to believe that this is a fraud scheme and a very wide-reaching fraud scheme by multiple players with multiple clinics with all these claims coming in until 2018. That's the record evidence in this case. None of the defendants asked one question to Mr. Bright, our corporate representative, that challenged that. There isn't one interrogatory question. There isn't a single document that was requested about the nature of our investigation that could in any way allow the district court to conclude that State Farm didn't act reasonably or diligently. And respectfully, that burden bearer is on this table, not on this table under the Morton's case. So Judge Scola got it right because he said they never met their initial burden. And by failing to do so, their summary judgment motion was properly denied, and of course State Farm's motion as whole, as Judge Brasher pointed out to start, was properly granted. What do you make of your friend at the other table's statement about the potential remedies under the local district court rule? With all due respect to Mr. Diaz, he's reading from the wrong rule. He's reading from the rule that came in under Local Rule 56.1 in 2019. That language in subsection D that he read from wasn't even present. It doesn't matter. I'm going to show you why. But it wasn't present in the local rule, and we pointed that out in our brief. That was in existence in 2013. But under any event, under either one of the rules, even taking the light most favorable to him, subsection C of the new rule specifically says that facts that are not directly pinpointed, controverted, may be deemed admitted. That is the exact language in the earlier rule which was applicable to this case. And the case law is very clear. The Taser case, which we cited out of this court, etc., makes it very clear that the requirements to comply with, and the court is sorting through the records, and we're looking for specific references in the record. The reason why the local rule requires pinpoint sites is so the courts, and Judge Scholar got it right, are not tasked with sorting through hundreds and hundreds, thousands of claims, health care claims in this case. This is a wide, multimillion-dollar fraud scheme to find issues of fact. Our system wouldn't work if that was the way the courts were challenged, and that's why the local rules say it. So respectfully to my opponents, they're just wrong on the law. The local rules require them to do something that they chose not to do so. What made it even more astonishing is that we raised this, and on motion for reconsideration after the initial order, they had time to cure it. They could have gone back to the court and said, you're right, we didn't comply. Sanction us or whatever the alternative ask was, but here it is, right? Page four, line eight, etc. They didn't do that. They literally just let it stand as it was when the court gave them the heads up. So when they complained that they got a rotten break by Judge Scholar, they were given every opportunity to fix it. And they chose not to do so. So I do not believe that there's any merit there at all with regard to that issue. We showed in our papers that the delayed discovery rule also is equally applicable here. Because cases that, once the amendment to Section 95 happened, any cases under unjust enrichment that are sound in fraud, based in fraud such as this case, the delayed discovery rule also applies. So we prevail on this appeal respectfully because there's no evidence to suggest that State Farm didn't know or knew of it earlier. The only record evidence is that we didn't know of this fraud until 2018. As Judge Moore in the BNA opinion explained, that where you have this type of a case, because I was counsel in that case, it was a near-identical fact pattern. We had a medical director who didn't do his duties, etc. Those type of cases are founded upon fraud. And there the delayed discovery rule, in fact, applies. And that is correct law. Ms. Parker also made a comment that I want to make sure that we're clear on, that it is not State Farm's job to police the ACCA rules and that we shouldn't have the ability to do so. To the extent that that is an issue in this appeal, that is absolutely wrong law. I argued that case before this court in the case of State Farm v. Silver Star. And this court affirmed the lower court's ruling that an insurer absolutely has the right to come before a district court to recoup for fraud losses for violations of Florida law pertaining to PIP. There is no unsettled law. And there is probably 20 or 30 decisions after I argued Silver Star that followed that law. So State Farm is properly before the district court. State Farm was a victim of a very complex widespread fraud scheme. We proved our case. The record is replete with the evidence of a myriad of violations. And so we're clear. All we would have to do is prevail on one of them. We wouldn't have to prove on all of them if we had won on one. The services were unlawfully rendered. And under Florida law, they became non-compensable. We did that. They created no record evidence to controvert that. And Dr. Louritas woefully failed by not participating in the discovery process where he might have. You know, it's interesting. If you read the Morton's decision, this court actually says it's not enough for a party to say, well, that evidence might have. That's the exact language from the Morton's decision. It says it's not enough. At best, that's what Dr. Louritas is doing here, saying, well, if we had looked at it, it might have. And Judge Grant asked me a hypothetical about, well, what if that record had come in and was just so glaringly fraud. That's a might-if question. And under Morton's, that doesn't satisfy Dr. Louritas' burden. Judge Scola got it right, and the final judgment should be affirmed. I've got actually one question for you about Lazaro. You said that he was connected to these clinics by serving as a landlord, designating specific vendors, providing consulting services, and giving financial support. Are those actions by themselves enough to support to make him a direct participant under FDUPTA, or do you need more? You do not need more. Take it as a whole. Let's understand what the record was in this case. Lazaro Mews was the first person on that side that opened the first PIP injury clinic, figured out how to run this scheme. He opened it. He then gave the seed money, $50,000, to his sister. She opened up, Beatrice Mews opened up her fraudulent clinic. They then opened up a billing company so they could use them to funnel billings through. Then they opened up a massage therapy school so they could train the massage therapists and put them in. Then, not only was he the landlord that controlled the operations of the physical footprint, then his testimony is very clear. I was the consultant for all of these clinics. By the way, he had his hand in selecting the owners of each of these other clinics, the Noel Santos, the Daniel Calazas, et cetera. As a consultant, we showed in the record that hundreds of thousands of dollars were then funneled out of these clinics from insurance money. By the way, they don't let patients pay. They only collect from insurers like my client. So the money flows into the clinics, and then they sucked it out. We have the chart in there of all the other, the Aqua Company and all these other companies that they were using to funnel it out. At deposition, when I asked Mr. Mews, well, what was your role? He boldly said to me, well, I'm a consultant. I said, well, what does that mean? This is all in the record. He said, well, you know, I consult on all aspects of the business. And then I asked him why he had access to the medical records of the business of these clinics, for which he is not entitled to do so under philosophical law. He had no answer. In his response in his papers, he says, well, no one in his affidavit, the two-page affidavit that Judge Scola looked at on the last page, mine's double-sided, he says, well, no one told me I wasn't allowed to do so. Well, last time I checked, you don't have to be told that you're not allowed to access private health information of patients. And these clinics willy-nilly opened up their medical records to this consultant who we know was the architect of the fraud scheme from the beginning. It all trickled down from Mr. Mews. Thank you, Mr. Spector. Thank you. Mr. Diaz, you have five minutes for rebuttal. I'd like to begin, if I may, with addressing Judge Brasher's question regarding abuse of discretion on the pinpoint citation issue. This is not a case on appeal before this court where, let's say, pleadings were stricken or defenses were stricken because of noncompliance with the rule, and it's an abuse of discretion standard. This case is on appeal on a granting of a summary judgment for a plaintiff. As Your Honor said, we see this 1 in 45 times in a fraud case, probably less than 1 in 45 times. So the standard of review, and I just don't want to go down a slippery slope, is not abuse of discretion. It's whether or not it's de novo review, whether or not the record as it stands is sufficient. Now, if we take aside that on deposition testimony we gave multiple pages and even excerpts, we didn't put line one to line two. If we put that aside for a moment, there is an ample record in this case to deny summary judgment. Let me go through the four points. What rule are we proceeding under? They've corrected the rule that you read, and they're saying that you were looking at the wrong rule, and the rule allows the judge to deem certain facts admitted. And so if that's what the judge has done, how is that an abuse of discretion? What the judge did not do here is determine which facts were admitted and which ones were not. He just, in a wholesale manner, said I am – because there are many – I'll give you an example. There are many areas where we're not citing to deposition testimony where we don't have lines. We're citing to an affidavit where it's five points, five on one page of an affidavit, five paragraphs. There's no line to talk about there, Dr. Sweets. And it even says it, if appropriate, in both versions of the rule, if appropriate. Well, it's not appropriate to cite to a line in an affidavit if it's a number. It's not appropriate to assign a line of a report that doesn't have lines numbered. So the court didn't go down and analyze and say, okay, you know what? This one is deposition testimony without lines. I'm taking it out. If you look at the record as a whole, as a whole, it supports a denial of summary judgment. There are four points I'd like to talk about in my remaining time. The first point, and this goes to all the counts, was that there were no good faith efforts to collect on deductibles. The record evidence shows, number one, Losser could not have done that because he was not an owner of any of the clinics. You did not raise that in your initial argument, and it wasn't discussed, I don't believe. That's fine. Well, Losser was discussed by State Farm. We didn't talk about the failure to collect the patient deductibles, I don't believe. All right. So let me just talk about then, in fairness, let me talk about Losser's position. He was a landlord of the businesses. He was a consultant. He didn't hire anybody. He didn't fire anybody. He didn't prepare the bills. He didn't supervise the treaters. He didn't select or supervise the medical director. His affidavit clearly says, I was not involved in the aspects of the business. I was a consultant. What did he do for all those consulting fees? I'm sorry? What did he do to earn all those consulting fees? He had been involved in PIP clinic businesses before this, and his family had gotten involved in the business, and he was there to try to assist them. For example, one of the parts of the record evidence is that Annette Perez, who he had used when himself was involved in PIP clinic ownership business, he used her to help them comply with ACCA. And the amounts of money that he received were not very significant at all. He did loan money for his sister. He did assist Noel Santos in exchange. Noel Santos was making payments to him instead of a check. He wrote some car payment installments. But that does not make him a direct participant in the clinic's activities, and he certainly is not a direct participant in what goes to State Farm, which are the ACCA 1500 forms. He's not involved in that whatsoever. He was looking at the medical records. If you read his deposition testimony, what he says is that he did look at the records as part of his consulting. He wanted to make sure that they were properly indexed, that they were in the right locations. He did not say, as suggested by State Farm's counsel, that he would go in there and look at HIPAA-protected information. What he said was, I needed to make sure that they were complying with ACCA, that the medical director would know where to go to get the records, that they were under lock and key. That's the record testimony, not that he was opening the file, opening the cabinets, opening the files, and reading HIPAA information. That's not the record evidence in this case. But let's suppose that it was. How does that make him liable for fraud? It may be an ACCA violation, but it doesn't make him liable for fraud. Isn't it showing that he is a direct participant? Direct participant, based on the case that we cited in our briefs, is when you are doing something that actively promotes the fraud. What promotes the fraud is the submission of the bills. He was not involved in the billing information, putting information into the bills. He was not involved in submitting the bills or even reviewing the bills before they went, for accuracy purposes, to State Farm. With regards to the other depo record of references in this case, we've cited to, again, the deposition testimony of Beatrice Muse, specifically by deposition pages. What this really comes down to is, are we going to allow multimillion-dollar judgments against people who have put opposing record evidence of record in the file, and just because they didn't put from line 1 to line 3, this is the result that we're going to have. Can you tell us the size of the file? I assume we're talking terabytes, thousands of pages. Do you know how to quantify that? I don't, other than to tell the court that there were probably 20 depositions taken in the case. Most of them were day-long depositions. The medical records were boxes and boxes, banker boxes, maybe six or so. Hundreds of medical records, just from my two clinics. But in terms of bytes, gigatera, I don't know one from the other, frankly. Thank you. Thank you. Ms. Parker, you have four minutes left for rebuttal. The case that was supplemented by State Farm, the Morton case, is actually in our favor because the court in that Morton case determined that the summary judgment was improvidently granted because defendant failed to conclusively establish plaintiff could have discovered through due diligence. There is not one pinned citation in the record by State Farm as to their acts of due diligence. Their expert didn't testify to it. It is only an allegation contained in their amended complaint, which was the basis for the court's denial of Dr. Lurie's motion to dismiss. To focus here is not just Dr. Lurie's motion for summary judgment as to the statute of limitations, where the standard of review is in favor of the non-moving party. The burden then shifted to the non-moving party, in this case State Farm, to present evidence that Dr. Lurie's actively and willfully misrepresented to raise to the level of a fraudulent concealment. And those 1500 forms and the ACCA licensing application are not those. Not one deposition from ACCA was taken by State Farm to determine whether or not Dr. Lurie's did something in violation of his obligations as a medical director. In fact, his affidavit, although self-serving and what affidavit is not self-serving, but his affidavit is the only record evidence along with exhibits attached to that affidavit because his deposition was not fully taken, support that he hired a third-party company to come in and randomly audit these records to determine sufficiency. He also renewed the ACCA licensing and ACCA gave them a clean bill of health. If there was any violation, ACCA would have brought that to his attention. And when he did undertake that review of those records and he noticed improprieties and inaccuracies, he brought it to the attention of the medical doctor, the treating doctor, and the owners of the clinic in order to correct those issues. That's not fraudulent concealment. That's not active and willful misrepresentation. Those forms signed by a medical doctor, even though they may have gone through his hands on their face, do not support that Dr. Lurie's actively and willfully participated in a fraudulent concealment. They talked about delayed discovery. Where is that due diligence? And again, delayed discovery does not apply to unjust enrichment and FDUPTA claims. They did not pursue summary judgment on their fraud claim. I would agree with counsel that fraud claim was ultimately dismissed. Now, if we reverse this and look at plaintiff State Farm's motion for summary judgment against Dr. Lurie's, the burden is on the plaintiff to establish there was fraudulent concealment as to the affirmative defense of Dr. Lurie's of statute of limitations is expired. It expired on April of 2017. This lawsuit was not commenced until August of 2018. Where in record is there evidence of due diligence? Their fear of getting sued does not rise to the level of fraudulent concealment or due diligence. And the court got it right when it revised its opinion and clarified. And the case law is sufficient that the issue of fraudulent concealment is an issue of fact for the trier of fact. The court, at my best day. Can I ask you a real quick question about the way the statute of limitations issue was presented to the district court? On which side? Oh, yeah. Well, both, I guess. I mean, so, you know, I see that it clearly was raised in your motion for summary judgment where the district court said there are issues of fact that preclude summary judgment in your favor. So my question, I guess, is was it clearly raised in opposition to plaintiff's motion for summary judgment where the fact that there were issues of fact in your favor would have led to a trial? Does that question make sense? Yes. If you take the record as a whole, you take Dr. Lurie's affidavit in support of his motion for summary judgment for use of opposition to State Farm's motion for summary judgment, it clearly creates a genuine issue of material fact. Yeah, but did he, I guess, in your motion for summary judgment, I mean, you didn't file, correct me if I'm wrong, but I thought there were two documents filed. There was a document opposing the plaintiff's motion where you joined the other defendants and then you filed your separate motion for summary judgment. In that document opposing plaintiff's motion, was the statute of limitations raised as a reason to deny plaintiff's motion for summary judgment? You're talking about Dr. Lurie's joinder of the statement of undisputed facts filed by a family? Yeah, well, I mean, just correct me if I'm wrong, but the document that you filed was just a motion for your own, a motion for summary judgment, right? Correct, along with an affidavit and exhibits to that affidavit and a statement of undisputed facts with citations to various areas in the record of the nonexistence of fraudulent concealment, of the nonexistence that, or the fact that the CMAs, the CMS 1500s and the APA application constitute fraudulent concealment or constitute an active or willful misrepresentation by Dr. Lurie. That's an issue of fact for a jury. So my best day here, I guess, was as opposed to hoping this court would reverse and grant Dr. Lurie's motion for summary judgment would be for this court to reverse State Farm's motion for summary judgment and let the matter go to trial. Let the trial of fact determine whether or not he actively and willfully concealed the fraud within that timeframe from the time that the cause of action accrued to the time they filed the suit. And the statute of limitations in our base, which is admitted by State Farm, was April of 2017. It's not, it is a genuine issue of fact as to whether or not those two documents, and for counsel to say that I woefully failed to conduct discovery, it's not, they're the moving party. What do I need to discover? They need to prove that they acted with due diligence. They alleged in their amended complaint that this fraudulent concealment, that it was hidden from them because they were afraid and they delayed in bringing lawsuits because they were afraid of being sued. Yeah, but isn't your, I mean, and like I said, this is an unusual summary judgment because the plaintiff won, but isn't the statute of limitations an affirmative defense that you bear some burden as the party that has that affirmative defense to raise and to put forward evidence in support of? I believe that we did, and State Farm admitted it in their statement of undisputed facts. Right, so you're saying you put forward the evidence that the time was what the time was. Exactly, and they admitted to that. They admitted the statute of limitations expired, but for fraudulent concealment, which again is a genuine issue of material fact. Thank you, Ms. Parker. Thank you, Your Honors. Thank you all. We have your case under submission.